## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 47536

| | |
|---|---|
| In Re: Order Certifying Question to the Idaho Supreme Court. ) | |
| ------------------------------------------------------- ) | |
| DAN GOODRICK, ) | |
| ) | |
|    Plaintiff-Appellant, ) | |
| ) | Boise, April 2020 Term |
| v. ) | |
| ) | Opinion Filed: August 5, 2020 |
| DEBBIE FIELD, DAVID McCLUSKEY, ) | |
| CINDY WILSON, AL RAMIREZ, D.W. ) | Melanie Gagnepain, Clerk |
| RICHARDSON, SGT. DAVID GOULD, c/o ) | |
| CAMPBELL, CP. HOSFORD, c/o ) | |
| BULZOMI, and K. BROWN, ) | |
| ) | |
|    Defendants-Respondents. ) | |
| _____ ) | |

Certified question of law from the United States District Court for the District of Idaho. B. Lynn Winmill, U.S. District Judge, presiding.

Certified question of law answered.

Dan Goodrick, Boise, for appellant pro se.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents.

_____

BRODY, Justice.

This case arrives at the Idaho Supreme Court as a certified question of law from the United States District Court for the District of Idaho. The question certified is: "Does Idaho Code [section] 20-209 require the state board of correction to provide employment for all prisoners, and, if so, what is the minimum the board must do to implement the statute's mandate?" We answer the question certified as follows: The statute requires the state board of correction (the Board) to make employment available for all prisoners in the form of: (1) labor assignments as prescribed by the Board's rules and regulations; and/or (2) implementation of statutory work programs managed by the Board in accordance with its rules and regulations. The Board retains

1

discretion to manage these prisoner employment opportunities pursuant to its broad control over the correctional system. Section 20-209 does not create a right to paid or unpaid work during a prisoner's period of incarceration or establish an employer-employee relationship between the Board and the prisoner. At a minimum, the Board must comply with legislation controlling its responsibilities managing prisoner employment and with its own rules and regulations.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

When addressing a certified question of law, this Court will only consider those facts contained in the certification order. *In re Decision on Joint Motion to Certify Question of Law to the Idaho Supreme Court (Dkt. 31, 32, 45)*, 165 Idaho 298, 299, 444 P.3d 870, 871 (2018). Thus, the following facts are drawn and recited verbatim from the U.S. District Court's certification order.

> Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Institution (ISCI). He asserts that he, and all IDOC prisoners, have a state-created liberty interest in being employed, arising from Idaho Code [section] 20-209:
>
> > *Control and management of correction facilities and prisoners — rehabilitative services* — Rules. (1) The state board of correction shall have the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction and all property owned or used in connection therewith, and shall provide for the care, maintenance and employment of all prisoners now or hereinafter committed to its custody.
>
> Plaintiff asserts that this is a 'very specific, clear, and unambiguous' mandate that the Board of Correction must provide all inmates with employment during incarceration.

The United States District Court for the District of Idaho *sua sponte* issued an order certifying a question for this Court. This Court accepted the certified question and designated Goodrick as the Appellant and the Board as the Respondent.

## II.      CERTIFIED QUESTION OF LAW

Does Idaho Code section 20-209 require the state board of correction to provide employment for all prisoners, and, if so, what is the minimum the board must do to implement the statute's mandate?

## III.      ANALYSIS

United States courts may certify "a controlling question of law in a pending action to the

Idaho Supreme Court where there is no controlling precedent in Idaho Supreme Court decisions and the determination would materially advance the orderly resolution of the litigation in the United States court." *Doe v. Boy Scouts of Am.*, 159 Idaho 103, 105, 356 P.3d 1049, 1051 (2015). The Court's role is "limited to answering the certified question[.]" *Id.* (quoting *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 375, 744 P.2d 102, 103 (1987)).

Raised for this Court's interpretation is Idaho Code section 20-209(1), which governs the Board's control and management of correctional facilities and prisoners. Idaho Code section 20-209(1) as it existed when the certified question was accepted by this Court provided:

> The state board of correction shall have the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction and all property owned or used in connection therewith, *and shall provide for the care, maintenance and employment of all prisoners* now or hereinafter committed to its custody.

I.C. § 20-209(1) (emphasis added).

The purpose of statutory interpretation is to give effect to legislative intent. *Saint Alphonsus Reg'l Med. Ctr. v. Elmore Cnty*, 158 Idaho 648, 652, 350 P.3d 1025, 1029 (2015). Interpreting a statute "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole." *State, ex rel. Wasden v. Maybee*, 148 Idaho 520, 528, 224 P.3d 1109, 1117 (2010) (quoting *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909 (2003)). To give effect to legislative intent, statutes are construed together *in pari materia*. *Maybee*, 148 Idaho at 528, 224 P.3d at 1117. "Statutes are *in pari materia* when they *relate to the same subject*." *Elmore Cnty*, 158 Idaho at 653, 350 P.3d at 1030 (emphasis added). Such statutes are "taken together and construed as one system[.]" *Id.* "It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." *Id.* Language in a particular statutory section need not be viewed in a vacuum; *all sections* of applicable statutes must be construed together to determine legislative intent. *Maybee*, 148 Idaho at 528, 224 P.3d at 1117 (emphasis added).

To answer the certified question, we begin by looking at the literal words of the statute and using their plain, usual, and ordinary meaning. Section 20-209(1) provides that the Board "shall" provide for the employment of prisoners. The word "shall" when used in a statute is mandatory. *Twin Falls Cnty. v. Idaho Comm'n on Redistricting*, 152 Idaho 346, 349, 271 P.3d

3

1202, 1205 (2012). The language following "shall" describes the Board's mandate. The remaining language reads, "*provide for* the . . . employment of all prisoners[.]" I.C. § 20-209(1) (emphasis added). The definition of "provide for" is "to cause (something) to be available or to happen in the future." *Provide for*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/provide%20for (last visited July 22, 2020). Using this definition, the Board is required to make employment *available* for all prisoners.

But what "employment" means in the statute is the heart of this dispute. In certifying the question, the U.S. District Court explains the significance of the meaning of the term "employment":

> Clearly, the statute charges the [Board] with providing employment for prisoners. The statute does not seem to require that all prisoners must be employed continuously. However, it is unclear to this [c]ourt whether the intent of the statute is to require the [Board] to provide some type of employment for each and every prisoner at some point during his or her incarceration. Or, does the statute impose a greater burden of requiring the [Board] to provide ongoing and meaningful employment for all prisoners—limited only by overriding penological, health, and safety concerns.

Idaho Code section 20-209(1) does not define "employment." Further, a plain reading of the statute does not make clear what type or length of employment the Board is to provide for its prisoners. As a result, we examine statutes relating to the same subject *in pari materia* to give effect to the legislature's intent regarding the meaning of "employment" in the correctional setting. *Elmore Cnty.*, 158 Idaho at 653, 350 P.3d at 1030.

Goodrick argues that "employment" in section 20-209(1) means a "paying job." In fact, when referring to the term "employment" in his brief, Goodrick adds "paying job" in parentheses immediately following the term. Goodrick's argument suggests that the Board must provide ongoing, paid, and meaningful employment using a common sense definition of the word. We disagree. As explained further below, the Board controls the limited employment opportunities available to prisoners. Within these limited employment opportunities, prisoners do not maintain a traditional employer-employee relationship with the Board. As such, prisoners do not have a right to ongoing, paid employment.

Because the certified question and the parties' arguments are based on what type of employment, if any, the Board is required to provide, it is helpful to review the Board's creation and constitutional role in Idaho. The Board derives its authority from Article X, section 5 of the

Idaho Constitution, which grants the Board control over the state's penitentiaries and prisoners. This section provides:

> The state legislature shall establish a nonpartisan board to be known as the state board of correction, and to consist of three members appointed by the governor, one member for two years, one member for four years, and one member for six years. After the appointment of the first board the term of each member appointed shall be six years. This *board shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult felony probation and parole, with such compensation, powers, and duties as may be prescribed by law*.

Idaho Const. art. X, § 5 (emphasis added). Under this constitutional requirement, the legislature established the Board as the "constitutional board of correction prescribed by section 5, article X, of the constitution of the state of Idaho." I.C. § 20-201A(1). Further, the legislature enacted various statutes further defining the Board's authority. *See* I.C. §§ 20-101–111. This Court has recognized that the "constitutional and statutory grants of authority afford IDOC and the Board wide-ranging authority over the management and operation of Idaho's prisons." *Searcy v. Idaho State Bd. of Corr.*, 160 Idaho 546, 553, 376 P.3d 750, 757 (2016).

At the outset, a review of other statutes relating to correctional matters—*in pari materia*—addressing prisoner employment leads us to two conclusions regarding the use of the term "employment" in the correctional setting. First, the legislature did not create a traditional employer-employee relationship when using the term "employment" in the correctional statutes. Second, the legislature did not create a *right* of employment for prisoners.

Prisoners are not "employed" in the traditional sense because they are not "employed" by the state, nor are they treated as the equivalent of "employees" outside of the correctional setting. Multiple sections of the Idaho Code clarify that prisoners are not considered the state's "employees." *See* I.C. § 20-242A; I.C. § 20-412 (2019), *amended by* An Act of Mar. 10, 2020, ch. 83, § 9 (Idaho 2020). For example, Idaho Code section 20-242A specifies that:

> Nothing in this section is intended to restore, in whole or in part, the civil rights of any inmate. *No inmate compensated under this section shall be considered an employee of the state or the board of correction, nor shall any inmate be eligible for worker's compensation under title 72, Idaho Code*, or be entitled to any benefits thereunder whether on behalf of himself or any other person.

I.C. § 20-242A (emphasis added). These provisions make clear that—even where the Board is authorized to create prisoner employment opportunities, including paid employment—prisoners are not employees.

Because prisoners are not considered employees, they also do not have a typical employer-employee relationship and are not extended the same benefits as employees outside of the correctional setting. For example, section 20-242A specifies that prisoners employed in these programs are not eligible for worker's compensation benefits even though employees outside of the correctional setting are afforded such benefits. *See., e.g.*, I.C. §§ 72-102(12), 72-201.

Given how the correction statutes distinguish prisoner employment from employment outside of the correctional setting, we now address the meaning of "employment" in section 20-209(1). Viewing related correctional statutes *in pari materia*, when referring to prisoner employment, the term "employment" means: (1) labor prescribed by the Board; and (2) specific legislative work programs managed by the Board. These forms of prisoner employment are addressed in turn.

The first form of prisoners' "employment" comes from the statutory relationship between the Board and the prisoners in its custody. This relationship mandates that prisoners are required to perform labor at the direction of the Board. All prisoners are committed to the custody of the Board, and "must, during their term of confinement, perform such *labor* under such rules and regulations as may be prescribed by the [Board]." I.C. § 20-101 (emphasis added). This provision requires prisoners to work, or "perform such labor," at the direction of the Board. Put differently, the legislature did not create a right to work for prisoners; rather it empowered the Board to assign work to prisoners through its broad discretion in managing the state's correctional system.

Within the Board's broad powers is the power to adopt and enforce rules and regulations. The legislature gave the Board wide discretion in adopting rules and regulations governing prisoner employment. Prisoners are to perform such labor at the direction of the Board pursuant to its "rules and regulations." I.C. § 20-101. The legislature authorized the Board to "make and adopt such rules and regulations for the . . . discipline of the correctional facility as [the Board] may consider expedient[.]" I.C. § 20-244. While section 20-244 grants the Board the authority to make and adopt rules, Idaho Code section 20-212 provides the requirements the Board must follow in adopting rules. In *Searcy v. State Board of Correction*, 160 Idaho 546, 376 P.3d 750 (2016), this Court concluded "that the [legislature] meant to give the Board flexibility in carrying out its difficult responsibilities by exempting internal rules from the rulemaking requirements." *Id.* at 556, 376 P.3d at 760. Thus, pursuant to Idaho Code section 20-244, the Board is given

6

flexibility in creating rules and regulations for prisoners working under its control.

Further, given that the Board is vested with the control, direction, and management of its prisons, the Board has the power to consider its own disciplinary rules when assigning and managing prisoners' work. For example, the Board adopted Standard Operating Procedure (SOP) 611.02.01.004 addressing "Incentive Pay for Incarcerated Individuals and CRC Workers." This SOP reiterates that all prisoners "perform labor under the rules established by the [Board]" and provides that "placement in an industrial job is *not a right but a privilege* that can be terminated at any time." (Emphasis added). While the Board has the power to assign prisoners' work and place prisoners in industrial jobs, this SOP is consistent with the Board's discretion to regulate who is eligible for these opportunities based on adherence to the Board's rules. Idaho Code section 20-209(1) requires the Board to make employment available for all prisoners, however, it does not obviate the Board's responsibility to manage and discipline inmates.

The second form of prisoner "employment" is the legislative work programs that provide prisoners with employment opportunities. Two examples of such programs are the inmate incentive pay program and the recently amended Correctional Industries Act, which authorizes a productive work program. *See* I.C. §§ 20-242A, 20-408 (2019), *amended by* An Act of Mar. 10, 2020, ch. 83, § 7 (Idaho 2020), 20-412 (2019), *amended by* An Act of Mar. 10, 2020, ch. 83, § 9 (Idaho 2020). Notably, neither of these programs *requires* the Board to employ prisoners in these programs. Idaho Code section 20-242A merely authorizes the Board to institute the incentive pay program, but does not require the Board to enroll prisoners in the program. *See* I.C. § 20-242A. Similarly, Idaho Code section 20-408(a) requires the Board to "[r]ecommend productive enterprises in the penal institutions under the jurisdiction of the department of correction, in such volume and of such kinds as to eliminate unnecessary idleness among the inmates and to provide diversified work activities[.]" While the Board is required to *recommend* such enterprises under section 20-408, the statute does not require the Board to enroll all prisoners in these enterprises. Further, section 20-408 vests the Board with discretion in creating rules and regulations to carry out the work program. The Board is required to "[a]dopt, rescind, modify and amend all necessary and proper orders, *rules and regulations* for the exercise of its powers and the performance of its duties[.]" *Id.* § 20-408(i) (2019) (emphasis added).

Additionally, the Board is not *required* to pay prisoners enrolled in these programs. The programs contemplate prisoners earning pay, but prisoner payment is not mandatory. For

example, sections 20-242A and 20-412 both provide that "[s]uch compensation, *if any*, shall be in accordance with a graduated" pay scale produced by the Board. I.C. §§ 20-242A, 20-412 (2019) (emphasis added). Section 20-412 goes further, providing that a prisoner engaged in productive work "*may* receive for his work such compensation as the [Board] shall determine[.]" I.C. §20-412 (2019) (emphasis added). Thus, even where the legislature enacts prisoner work programs to make employment opportunities available to prisoners, prisoners are not guaranteed compensation and the Board maintains discretion in managing and operating them. Accordingly, the Board is required to make employment available for all prisoners in the form of: (1) labor assignments as prescribed by the Board's rules and regulations; and/or (2) implementation of statutory work programs managed by the Board in accordance with its rules and regulations.

In both of these forms of prisoner employment, the Board maintains discretion in managing eligibility requirements for employment because the "constitutional and statutory grants of authority afford . . . the Board wide-ranging authority over the management and operating of Idaho's prisons." *See Searcy*, 160 Idaho at 553, 376 P.3d at 757. Thus, while the Board must make prisoner employment available for prisoners, the Board has the right to condition employment on whether prisoners comply with internal correctional rules. The Board is not required to provide any particular type or length of employment, nor is it required to provide paid employment.

The certified question poses a secondary inquiry, asking if Idaho Code section 20-209 requires the Board to provide prisoner employment, what is the minimum the Board must do to implement the statute's mandate?

At minimum, the Board must comply with legislation controlling its responsibilities in managing prisoner employment and its own rules and regulations addressing prisoner employment. Various statutory provisions outline the Board's responsibilities in managing aspects of prisoner employment. For instance, the Idaho Code requires the Board to set up inmate accounts for deposit of "all money earned from institutional employment[.]" I.C. § 20-209H. Further, Idaho Code section 20-408 describes the Board's responsibilities in managing prisoner employment opportunities offered through the Correctional Industries Act. I.C. § 20-408. The Board has also adopted numerous rules and regulations managing prisoner employment. For example, SOP 611.02.01.004, which addresses inmate incentive pay, provides guidelines for the Board in implementing inmate incentive pay programs authorized by Idaho

Code section 20-242A. Beyond these statutes and rules, the Board is not required to provide prisoners with ongoing employment throughout their incarceration. Whether the Board has abused its discretion in determining a prisoner's eligibility for, and participation in, paid work programs is a question of fact that must be determined on a case-by-case basis.

Finally, we note recent legislative action on this very topic. On March 23, 2020, Governor Brad Little signed Senate Bill 1370 into law. Senate Bill 1370 amended the language of Idaho Code section 20-209(1) applicable to this certified question, replacing mandatory language with permissive language. As amended, Idaho Code section 20-209(1) now provides:

> The board shall provide for the care and maintenance of all prisoners now or hereinafter committed to its custody. The *board may also provide for employment of those prisoners* housed at a correctional facility. *Nothing in this section creates a right to any employment*.

Act of Mar. 23, 2020, ch. 223, § 1 (Idaho 2020) (emphasis added).

The legislature's Statement of Purpose in proposing the bill directly references the certified question presented to this Court. Statement of Purpose, S.B. 1370, 2020 Leg., Reg. Sess. (Idaho 2020). The Statement of Purpose provides that the amendment "[clarifies] that while the [Board] may provide for the employment of prisoners . . . [s]ection 20-209 does not create a right to employment. The bill included an emergency clause so that it t[ook] effect immediately upon enactment, making the state's policy clear to the courts in the pending cases." Statement of Purpose, S.B. 1370. Thus, the legislature amended Idaho Code section 20-209(1) to address the exact question certified to this Court and to clarify Idaho's law regarding prisoner employment. Although it references this case, the legislature's Statement of Purpose did not bear on this Court's statutory interpretation analysis. Notwithstanding the amendment to section 20-209(1), we answered the certified question using the statute in place at the time the question was certified.

## IV.   CONCLUSION

The question certified is answered as follows: Idaho Code section 20-209 requires the Board to make employment available for all prisoners in the form of: (1) labor assignments as prescribed by the Board's rules and regulations; and/or (2) implementation of statutory work programs managed by the Board in accordance with its rules and regulations. The Board retains discretion to manage these prisoner employment opportunities pursuant to its broad control over the correctional system. Section 20-209 does not create a right of paid or unpaid employment

during a prisoner's period of incarceration or establish an employer-employee relationship between the Board and the prisoner. At a minimum, the Board must comply with legislation controlling its responsibilities managing prisoner employment and with its own rules and regulations.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.