UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>                     Plaintiff,<br><br>     v.<br><br>DEBBIE FIELD, DAVID McCLUSKEY, CINDY WILSON, AL RAMIREZ, D.W. RICHARDSON, SGT. DAVID GOULD, C/O CAMPBELL, CP. HOSFORD, C/O BULZOMI, and K. BROWN,<br><br>                     Defendants. | Case No. 1:19-CV-00088-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Dan Goodrick's Complaint as a result of his status as an inmate and in forma pauperis request. The Court determined that the Complaint presented a question of Idaho statutory interpretation that should be certified to the Idaho Supreme Court. The Court stayed this action pending the Idaho Supreme Court's answer.

Having received and reviewed the answer of the Idaho Supreme Court, this Court now lifts the stay in this case and enters the following Initial Review Order.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

# REVIEW OF COMPLAINT

1.  **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Institution (ISCI). He asserts that he had been both working as a janitor and volunteering as the caretaker of an incontinent inmate in the ISCI medical annex for almost a year. Plaintiff is handicapped and asserts that this particular janitorial job was particularly well-suited for his disabilities. Plaintiff alleges that when a new supervisor, Defendant David Gould, was hired in the medical annex, Gould said he was going to fire all the janitors and hire inmates from outside the annex.

Plaintiff asserts that Gould fired two janitors by falsely accusing them of theft. One of those inmates pursued a successful grievance against Gould. When Plaintiff learned of the firings, he wrote a concern form to Gould, stating:

> I'm being squeezed out of being a janitor and what I've been doing. Is it because of my age or disabilities or both? No other living unit has outside janitors other than medical and they are patients. I've busted my ass for months. Now it seems all you want me for is to clean up urine and shit and cut my hours to nothing. I'd like a response.

(Dkt. 3, Exhibit 2.) Defendant Campbell replied: "Your concern is noted and there are other janitor working in unit that do no live there." (*Id.* (verbatim).)

Plaintiff says that, "after receiving a response from Gould" (even though it was Campbell), he filed a grievance against Gould. The grievance said essentially the same thing as the concern form. (Dkt. 3, Exhibit 3.) Gould's reply was that gender, race, and

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

age are not factors in the hiring process and that it was possible inmates from outside the unit would be hired. Warden Ramirez's appellate reply was: "In reviewing the situation I do not find any nefarious reason regarding why you were let go. The incentive work program at ISCI is a privilege and not a right." (*Id.*)

Nine days after Plaintiff filed the grievance, Campbell called him into the office and said, "We have to let you go. Staff on the other shift say you're too demanding." Plaintiff replied, "Why, because I ask them to stay off the phone or computer long enough with their boyfriend to do their job?" (Dkt. 3, p. 10.) Plaintiff states that Campbell then entered "false information" in his "C-Notes" stating Plaintiff "was let go due to a negative attitude towards staff and inmates." (*Id.*, pp. 10-11.)

Plaintiff alleges that Defendant Gould directed Campbell to make the C-Note entry in retaliation for filing a grievance against him. Plaintiff asserts that he later was not able to get a hospice job because of the negative C-Note.

2.     **Discussion**

   A.     *Statutory Cause of Action*

Plaintiff asserts that he and all IDOC prisoners have a state-created liberty interest in being employed, arising from Idaho Code § 20-209:

> *Control and management of correctional facilities and prisoners — rehabilitative services* — Rules. (1) The state board of correction shall have the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction and all property owned or used in connection therewith, and shall provide for the care, maintenance and employment of all prisoners now or hereinafter committed to its custody.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

Plaintiff asserts that this is a "very specific, clear, and unambiguous" mandate that the Board of Correction must provide all inmates with employment during incarceration.

In interpreting this statute, the Idaho Supreme Court opined:

> Idaho Code section 20-209 requires the Board to make employment available for all prisoners in the form of: (1) labor assignments as prescribed by the Board's rules and regulations; and/or (2) implementation of statutory work programs managed by the Board in accordance with its rules and regulation. The Board retains discretion to manage these prisoner employment opportunities pursuant to its broad control over the correctional system. Section 20-209 does not create a right of paid or unpaid employment opportunities during a prisoner's period of incarceration or establish an employer-employee relationship between the Board and the prisoner. At a minimum, the Board must comply with legislation controlling its responsibilities managing prisoner employment and with its own rules and regulations.

(Dkt. 19.)

In determining whether a private right of action is contained in a statute, the Idaho Supreme Court "focus[es] [its] inquiry [on] whether the legislature intended to create such a private remedy." *Yoakum v. Hartford Fire Ins. Co.*, 923 P.2d 416, 421 (1996) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "In the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate." *Id*. (citing *Middlesex County Sewerage Auth. v. National Sea Clammers*, 453 U.S. 1, 15 (1981)).

The Idaho Supreme Court determined that I.C. § 20-209 does not establish a state-created right for each prisoner to have a job during incarceration. The Idaho Supreme Court is the "final judicial arbiter of the meaning of state statutes." *See Sass v. California*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

*Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).[1] Accordingly, Plaintiff cannot proceed on his causes of action based on I.C. § 20-209.[2]

### B.  *Discrimination Causes of Action*

Plaintiff includes the Americans with Disabilities Act (ADA)[3] as a legal basis for his claims, but he has failed to include sufficient facts to support such claims. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Title II prohibits public entities from discriminating against qualified individuals with disabilities who seek to participate in programs, services, and activities provided by public entities. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208 (1998). The United States Supreme Court has held that Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a physical disability. *Id.*, 524 U.S. 208 (holding that

---

[1] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arises from state law, not from the federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

[2] The state legislature's recent clarifying change of the statute while this case has been pending has no bearing on the outcome of this case.

[3] Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. § 12101, *et seq*. (Title I), § 12132, *et seq*. (Title II).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

prisoner was denied access to boot camp program, the successful completion of which would allow prisoner early parole).

However, the United States Court of Appeals for the Ninth Circuit has held that Title II of the ADA does not apply to employment claims because "[o]btaining or retaining a job is not 'the receipt of services,' nor is employment a 'program[ ] or activit[y] provided by a public entity.'" *Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1175 (9th Cir. 1999) (quoting 42 U.S.C. § 12132), *cert. denied,* 531 U.S. 1189 (Feb. 26, 2001) (nonprisoner context). The Ninth Circuit has not ruled on whether employment of prisoners, with or without pay, might be considered a rehabilitative "program."

Regardless, Plaintiff has shown no causal connection between his age or disability and his termination. Rather, his admission of rude and disrespectful language to staff and the corresponding C-Note noting his "negative attitude toward staff" are sufficient grounds for termination in "at-will" employment—which means that an employee can be terminated for any reason except an illegal one. There are no plausible allegations in the record to support Plaintiff's assertion that he was fired on the basis of his age, disability, or another illegal factor. Plaintiff has failed to state a claim upon which relief can be granted.

### C.     *Retaliation Causes of Action*

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). In other words, retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

As noted above, Plaintiff admitted to Campbell that he told staff that they should stay off the phone or computer long enough with their boyfriend to do their job. That admission supports the stated reason for his termination and the C-Note that said he "was let go due to a negative attitude towards staff." Rude and disrespectful speech about staff is not protected speech in a job setting. Plaintiff's allegations show that he was not engaged in conduct protected by the First Amendment. *See Quezada v. Herrera*, 2012 WL 1076130, at *4 (E.D. Cal. Mar. 29, 2012), *aff'd*, 520 F. App'x 559 (9th Cir. 2013)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

(inmate's verbalization to supervisor that inmates have to wear hairnets but Sacramento personnel inspectors do not was not protected speech); *Ruiz v. California Dept. of Corrections*, 2008 WL 1827637 at * 1, *3 (C.D.Cal. April 22, 2008) (prisoner's comments expressing dissatisfaction with his prison supervisor's management skills was not a matter of public concern protected by the Free Speech Clause); *Whitfield v. Snyder*, 2008 WL 397457 at *3 (7th Cir. Feb.14, 2008) (prisoner's complaint about prison job involved matters of personal, rather than public, concern and did not qualify as protected speech).

  Rude and disrespectful speech has no place in a work environment. Defendant Campbell had a legitimate penological reason to terminate Plaintiff. In addition, Plaintiff has not shown that Gould retaliated against him for filing a concern. In fact, it was Campbell, rather than Gould, who answered the concern form and terminated him. Neither has Plaintiff shown anything other than timing as ground for alleging that Gould retaliated because of the grievance. Gould's response in the grievance showed that Gould knew the appropriate grounds for hiring and termination, and no retaliatory intent can be gleaned from his response. Nothing in the record shows that Gould was not free to hire the inmates of his choice once he became supervisor.

  That Plaintiff now is having difficulty obtaining another job—even though he has been recognized at the prison as an otherwise-qualified, hardworking employee—is a result of his own inability to conform his actions to what is necessary in a work environment. The C-Note he complains of reflects the non-protected admission made in

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

his pleadings and exhibits. Plaintiff has failed to state plausible facts to support a retaliation claim.

### D.    *Provision of Employment and Termination Records*

Generally, pro se plaintiffs are permitted to amend their complaints. Here, amendment appears futile because Plaintiff had admitted to the act that was the legitimate basis for his termination, and his statutory causes of actions have become moot by the Idaho Supreme Court's interpretation of the statute at issue. However, out of an abundance of caution, the Court will require Defendants to submit Plaintiff's work-related prison records in a *Martinez* report.[4] Defendants may also provide affidavits or explanations supporting the records in the *Martinez* report.

## ORDER

**IT IS ORDERED:**

1. The Clerk of Court shall lift the stay and re-open this case.

2. The Clerk of Court shall serve, via the ECF system, a copy of this Order and Plaintiff's Complaint (Dkt. 3) on the following counsel on behalf of Defendants:

---

[4] The Court has authority to request evidence to assess Plaintiff's claims during the screening process via a Martinez report. In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), rather than dismissing the complaint or sending it out for service and an answer, the district court ordered prison officials to conduct an investigation of the incident to include an interrogation of those concerned. The transcripts of the interrogations and an explanation by the officials were to be provided to the court to enable it to decide the jurisdictional issues and make a screening determination under 28 U.S.C. § 1915(a). *Id.* at 319. The Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008), concluding that, "[a]s a permissible option within its broad discretion, a district court in an appropriate case can issue a Martinez-style order that is reasonably tailored to the pretrial needs of the district court to assess the case."

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

      **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706.

3. The Clerk need not send a waiver of service of summons at this time, because the case remains in screening status.

4. Counsel for Defendants are requested to make a limited appearance for the purpose of providing a *Martinez* report, supported by any relevant prison offender concern forms, grievances, C-Notes, employment, hiring, and termination records, and other documents relevant to the issues set forth above. The *Martinez* report should be filed within **90 days** after entry of this Order. The Court will then provide instructions for amendment or an explanation of why the complaint will be dismissed.

5. The *Martinez* report does not need to be in any particular format, but counsel can present the report in any organized manner that makes sense in response to the allegations of the Complaint and this Order. Exhibits that implicate privacy or security concerns may be filed under seal or in camera, as may be appropriate. Exhibits filed in camera must be accompanied by a privilege or security log that is provided to Plaintiff.

6. Plaintiff may file a response of no more than ten pages to the *Martinez* report and, if he desires, an amended complaint with a motion to amend, within **30 days** after the report is filed.

7. Plaintiff's Request to Take Judicial Notice (Dkt. 16) is DENIED as moot.

8. Plaintiff shall file nothing further except for a response to the Defendants' *Martinez* Report.

DATED: October 13, 2020

B. Lynn Winmill
U.S. District Court Judge